## PROVIDENCE COUNTY.

### STATE *vs.* CLARA HULL.

At the trial of an indictment against A. for maintaining a common nuisance, *i. e.*, a house of ill-fame, against Pub. Stat. R. I. cap. 80, §§ 1, 2, the prosecution was allowed to put in evidence as to the reputation of A. for chastity.

*Held*, error. The individual character and reputation of A. were not in issue and could not be attacked until and unless A. put them in issue by becoming a witness or by adducing evidence to support them.

At the trial the attorney general stated to the jury that it was the privilege of the defendant to testify or not and then strongly commented on the defendant's omission to testify or to adduce evidence.

The court condemns the conduct of the attorney general but as the record showed no request made by the defendant for instructions to the jury to disregard the attorney general's statements, declined to consider such conduct reason for a new trial.

DEFENDANT'S petition for a new trial.

*February* 18, 1893. TILLINGHAST, J. The defendant, who was found guilty in the Court of Common Pleas at the September term 1891, of keeping and maintaining a common nuisance, to wit, a house of ill-fame, in the city of Providence, now petitions this court to grant her a new trial on the grounds, *first*, that the court below erred in admitting testimony relating to the reputation of the defendant, and *second*, that certain remarks made to the jury by the Attorney General in his argument, were improper and prejudicial to the rights of the defendant.

The Attorney General was permitted by the court, against the objection of the defendant's counsel, to ask Thomas D. Tyler, a witness called in behalf of the State, the following question, namely: "What is the reputation of Clara Hull?" Said Clara Hull was the defendant in said case. George R. Waterman, another witness called in behalf of the State was asked the following question, viz: "Do you know what is Clara Hull's reputation for chastity?" Several other witnesses called by the Attorney General, were each asked the question, against the defendant's objection, "What is the reputation of Clara Hull?" No testimony was offered at the trial in behalf of the defendant. The Attorney General con-

tends that, under an indictment for keeping and maintaining a house of ill-fame, evidence of the character of the defendant for chastity, as well as that of the inmates of such house and of those who frequent the same, is admissible.

We do not assent to this proposition. It is a fundamental principle of the criminal law that the character of a defendant cannot be impeached or attacked by the State unless he puts his character in issue, either by becoming a witness in his own behalf or by offering evidence in support of his character. *State* v. *Waldron*, 16 R. I. 191, 195; *State* v. *Ellwood*, 17 R. I. 763; *State* v. *Creson*, 38 Mo. 372; *State* v. *Lapage*, 57 N. H. 245, 290; *Young* v. *The Commonwealth*, 6 Bush, 312, 316; *Regina* v. *Rowton*, 10 Cox Crim. Cas. 25, 30; Greenleaf on Evidence, 13th ed. §§ 25, 26, and cases cited; excepting, that in those cases where the defendant's character is put in issue by the prosecution, then the prosecutor may examine as to particular facts, for it is impossible without it to prove the charge. 1 Chitty on Criminal Law, 574, 575; *The People* v. *White*, 14 Wend. 111, 114; Wharton on Criminal Evidence, 8th ed. § 64, and cases cited in note 6. See also, *Knight* v. *The State*, 70 Ind. 375, 380; *Allen* v. *The State*, 15 Texas App. 320, 323; *Morrison* v. *The State*, 76 Ind. 335. The case before us is not one which comes within the exception just mentioned, as would that of one charged with being a "notorious thief," *World* v. *The State*, 50 Md. 49 ; or of being " guilty of notorious adultery," under a statute making such an offence indictable, *The People* v. *Gates*, 46 Cal. 52; Wharton on Criminal Law, § 1747. The defendant is charged with keeping a house of ill-fame under the provisions of Pub. Stat. R. I. cap. 80, § 1,[1] and we fail to see

---

[1]Pub. Stat. R. I. cap. 80, § 1, 2, are as follows:

SECTION 1. All buildings, places or tenements used as houses of ill-fame, resorted to for prostitution, lewdness or for illegal gaming, and all grog-shops, tippling-shops or buildings, places or tenements used for the illegal sale or keeping of intoxicating liquors, or where intemperate, idle, dissolute, noisy or disorderly persons are in the habit of resorting, are declared to be common nuisances.

SEC. 2. Every person keeping or maintaining any such common nuisance shall be fined not less than one hundred dollars, nor more than one thousand dollars, and be imprisoned not less than thirty days, nor more than one year.

that her individual character is thereby put in issue any more than it would have been had she been indicted under the same section for keeping. and maintaining a grog-shop or tippling shop.    And under an indictment for the last named offence we have never known of evidence being admitted as to the character of the defendant unless he voluntarily put his character in issue.    That the "ill-fame" or bad reputation of the house may be put in evidence in a case like the one before us, as may also the bad reputation of the inmates and of those who frequent the place, there seems to be no doubt.    *Commonwealth* v. *Gannett*, 1 Allen, 7;   *Commonwealth* v. *Kimball*, 7 Gray, 328, 330; *State* v. *Boardman*, 64 Me. 523; *State* v. *Lyon*, 39 Iowa, 379; *McCain* v. *The State of Georgia*, 57 Ga. 390; *Beard* v. *The State*, 71 Md. 275; *State* v. *Towler*, 13 R. I. 661, 665; *Commonwealth* v. *Clark*, 145 Mass. 251, 255; Wharton on Criminal Evidence, § 261, and cases cited.    But to go beyond this and admit evidence of the character of the person on trial for the *keeping* of such a house, is, it seems to us, clearly violative of the defendant's rights.    In *The State of Iowa* v. *Hand*, 7 Iowa, 411, which was an indictment for keeping a house of ill-fame resorted to for the purpose of prostitution and lewdness, the court in which the case was originally tried, instructed the jury "that it was not necessary for the state to prove particular acts of lewdness, or prostitution, common reputation as to the character of the defendant, and of the house which he kept, is admissible to prove the crime."    The defendant was found guilty, and in reversing the judgment, the supreme court said: "The indictment is against the *keeper*, and not against the house as a nuisance.    To convict, the house must be shown to be a house of ill-fame, resorted to for the purpose named, and that defendant was the keeper of it.    Particular acts of lewdness, or prostitution, need not be proved.    The counsel for defendant admit this much, and also that the character of the house may be fixed, or shown, by reputation or rumor.    The objection is, that the defendant cannot be made liable as the keeper of such a house, by evidence of 'common reputation as to his character.'    And this objection we believe to be well

taken. The bad character of the prisoner is entirely immaterial, in the first instance, in determining whether he was the keeper of the house. And that he was the keeper, must be shown in order to convict. If the charge was against the house, then its fame—ill-fame—might be shown, by proving, among other things, the character of the persons, (the defendant among others), resorting there from time to time. . . . Common reputation as to his character, however, is quite a different thing, and is not admissible to prove the crime here charged." In *Gamel* v. *The State*, 21 Texas App. 357, the prosecution was allowed to prove over objection, the defendant's general reputation for want of chastity. In reversing the judgment in that case the court said: "The indictment is for keeping a disorderly house, not the keeper's character for being a common prostitute, or having a reputation for want of chastity. Such evidence was not admissible, because it did not tend to prove the issue to be tried." See also *Allen* v. *The State*, 15 Texas App. 320.

The Attorney General has referred us to several cases in which it is held that common reputation as to the character of the defendant is admissible. It is so held in *State* v. *McDowell*, Dudley, S. Car. 346, but the court, while stating that the admissibility of such evidence " can be fully shown," cites no cases in support thereof. In *Sparks* v. *The State*, 59 Ala. 82, 87, the court says that, " Accompanied by evidence, (which appears to have been given) that the defendant held herself out, as having control over, managing and keeping the house, and that it was frequented by persons of dissolute habits, and that the reputation of its inmates for chastity was bad, it was permissible to show that the character of the defendant for chastity was bad." The same doctrine seems to be held in *Betts* v. *State*, 93 Ind. 375, although not necessary to the decision. We think, however, that the better authorities as well as the better reason are opposed to the doctrine of these cases, and we are not therefore disposed to follow them.

The case of *People* v. *Saunders*, 29 Mich. 269, cited by the Attorney General, simply holds that under section 7702 of

the Compiled Laws of Michigan, which makes the letting of a dwelling house "knowing that the lessee intends to use it as a place of resort for the purpose of prostitution and lewdness," a crime, the prosecutor may prove that the *lessee* is a woman of ill-repute, and had previously kept houses of ill-repute. But it does not hold that the character of the *defendant* can be attacked.

We therefore decide that it was error to permit the State to offer evidence relating to the defendant's character.

The language used by the Attorney General in his argument to the jury, of which the defendant complains, was as follows: "Gentlemen, of course it is not proper for me to remark upon the failure of the respondent to testify in this case, but if she stands here as a defendant to meet these charges, it is her duty to meet not by her own testimony, it is her privilege to testify or not, but she can put on other witnesses to show that her house is the moral place, the pure place, that she would have you believe. It is a serious matter if she does not answer the questions that are asked about it. She could prove that it is all right by others, that her house is a pure place. . . . . She does not dare to put in her testimony, for the testimony for the defence would show you more plainly than the testimony that has gone in on the side of the State, as to this house at No. 20 Walker street being a house of prostitution." While we do not think that the use of this language furnishes sufficient ground for a new trial, as the Attorney General expressly stated that it was not proper for him to remark upon the failure of the defendant to testify,' yet as the matter has been brought upon the record, and formally urged as a ground for a new trial, we can do no less than express our disapprobation of this line of argument on the part of the State.

It was the defendant's privilege as well as right, not only to remain silent herself, but also not to offer any testimony

---

¹Pub. Stat. R. I. cap. 214, § 39, provides:

SEC. 39. No respondent in a criminal prosecution, offering himself as a witness, shall be excluded from testifying because he is such respondent, and the neglect or refusal so to testify shall create no presumption against him.

in her defence, but to rely upon the presumption of innocence which obtained in her favor, and the insufficiency of the evidence produced by the State, to convict her. In other words, the State was bound to prove her guilty, without any assistance, either active or passive, on her part. To assume in argument, therefore, that testimony for the defence, if offered, would show, more plainly than that put in by the State, that the defendant was guilty, was certainly going somewhat beyond the limit of legitimate inference.

But, in order to constitute said objectionable remarks a ground for new trial, in any event, it was the defendant's duty to have objected thereto at the time, and to have requested the court to charge the jury not to consider them, which, so far as the record shows, she failed to do. *Young* v. *The State*, 19 Texas App. 536; *Comer* v. *The State*, 20 South Western Reporter, 547; 16 Amer. & Eng. Encyc. Law, 527, and cases in note 1, p. 528.

For the error first above specified we grant the defendant a new trial.

*Petition granted.*

*Robert W. Burbank*, Attorney General, for the State.
*Charles H. Page & Franklin P. Owen*, for defendant.

NOTE—For an exhaustive examination of the authorities on the general question considered in the foregoing opinion, see the article entitled "Evidence of Character and Reputation" by Ardemus Stewart, 32 Amer. Law Register, 229-248.