STATE

v.

**Richard D. TAYLOR.**

No. 79–35–C.A.

Supreme Court of Rhode Island.

Feb. 26, 1981.

Dennis J. Roberts II, Atty.Gen., Alfred French Goldstein, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

WEISBERGER, Justice.

The defendant, Richard D. Taylor, was convicted by a jury in the Superior Court pursuant to a criminal information which charged him with knowingly receiving a stolen chattel with a value in excess of $500, to wit, a 1978 Mercury Cougar XR7, in violation of G.L.1956 (1969 Reenactment)

§ 11–41–2, punishable under § 11–41–5.[1] On appeal the defendant makes the following assignments of error: that the trial justice erred in her instructions to the jury concerning the statutory presumption of knowledge in respect to stolen goods [2] and in defining reasonable doubt. The defendant further asserts that the response of the trial justice to defense objections to improper prosecutorial comments during final argument was inadequate. Our determination of the issue of improper prosecutorial conduct is dispositive; therefore, we will not reach the other issues raised.

On the afternoon of January 27, 1978, when Richard Taylor was traveling on Route 5 in Smithfield, Rhode Island in a silver 1978 Mercury Cougar XR7 with his friend, Rhonda Brent, he was stopped by State Police Corporal John Racine. The stopping of the vehicle was precipitated by circumstances that caused the officer to form a suspicion concerning its registration. Upon request for license and registration, Richard Taylor produced his Rhode Island driver's license but admitted that the automobile was unregistered. Mr. Taylor explained that he had recently purchased the car from a woman in Kentucky and had not yet registered it. Additionally, Richard Taylor was unable to produce a bill of sale or any other proof of ownership.

At Corporal Racine's request Richard Taylor followed the officer in his automobile to the State Police barracks. An initial check with the National Auto Theft Bureau came back negative. Richard Taylor was released but the car was impounded pending proof of ownership. The following day Richard Taylor notified the police that he did not have a bill of sale for the car. At this point a factory trace of the vehicle identification number was made. This trace showed that the car had been shipped to Preston Lincoln-Mercury of Nashville, Tennessee. The Rhode Island State Police notified the car dealership in Nashville and requested that they investigate further. Shortly thereafter, on February 1, 1978, the silver Mercury Cougar XR7 that had been impounded by the Rhode Island State Police was reported stolen. Richard Taylor was charged by criminal information on April 26, 1978, with

> "knowingly receiv[ing] stolen goods, chattels and property, to wit, a 1978 Mercury Cougar XR7, VIN # 8H93H540494, belonging to PRESTON LINCOLN MERCURY, a Tennessee Corporation, being of the value of over Five hundred dollars ($500.00), in violation of § 11–41–2 and § 11–41–5 of the General Laws of Rhode Island, 1956, as amended (Reenactment of 1969)."

At trial in the Superior Court for Providence County, the defense presented two witnesses: the defendant, Richard Taylor, and his passenger at the time of the automobile stop, Rhonda Brent. The defense contended that Richard Taylor had purchased the automobile while living in Nashville, Tennessee, for adequate consideration without notice of a defect in the seller's title, thus refuting the essential knowledge element of the offense of receiving stolen goods. *State v. Kurowski*, 100 R.I. 25, 210 A.2d 873 (1965); *State v. O'Neill*, 53 R.I. 497, 167 A. 263 (1933); *see In re Vincent*, R.I., 413 A.2d 78 (1980).

The defendant testified that he had been working temporarily in Nashville on a con-

---

1. At the time defendant was charged in 1978, § 11–41–5 of G.L.1956 (1969 Reenactment) provided that punishment for larceny of property of value in excess of $500 would be "by imprisonment for not more than five (5) years, or by a fine of not more than one thousand dollars ($1,000), or by both * * *." Section 11–41–5 has since been amended by P.L.1980, ch. 318, § 1 and now provides that punishment for larceny of property of value in excess of $500 will be "by imprisonment for not more than ten (10) years, or by a fine of not more than five thousand dollars ($5,000) or by both * * *."

2. After trial and conviction in this case, this court decided *In re Vincent*, R.I., 413 A.2d 78 (1980), which held that the presumption of knowledge that the goods were stolen, under G.L.1956 (1969 Reenactment) § 11–41–2, is permissive rather than mandatory. *Vincent* is conclusive on this issue; however, we shall not reach the merits of defendant's argument because it is not necessary to do so for our decision in this case.

struction job. While there, he purchased the Cougar in nearby Kentucky from an acquaintance, Judy Campbell Sartain, for $5,500. A stipulation by the parties concerning depreciation of the automobile resulting from damage and mileage gave support to the reasonableness of the $5,500 purchase price. A slip of paper on which was written Ms. Sartain's name and address was admitted into evidence and identified as one of the papers defendant gave to officer Racine, when stopped, to identify his vendor. Richard Taylor testified that at the time of the purchase Ms. Sartain gave him two sets of keys and a dealership warranty card and that she promised to mail him the title certificate within the next few weeks. The defendant also explained that he had paid for the car with cash because while working away from home, it was his practice to carry "a lot" of money. He stated that he had several sources of income which included his construction pay, income from pool hustling, and money sent to him by his parents and grandparents.

Although in the course of defense testimony individuals were identified who could have corroborated defendant's testimony, namely Judy Campbell Sartain and the parents and grandparents of defendant, they were not called to testify on defendant's behalf. In final argument to the jury, the prosecutor twice commented directly on the failure of defendant to call corroborating witnesses. The defendant argues that these statements were improper under our holding in State v. Jefferson, 116 R.I. 124, 353 A.2d 190 (1976), and that the cautionary instruction given by the trial justice was inadequate.[3] We agree.

The prosecutor first argued:

"[The defendant] said his mother sent him money, his grandmother [sic]. I didn't see them come in to testify. He raised that issue. I didn't see them come in here and say—"

After the trial justice's admonition, the prosecutor again argued:

"The deal probably was so good, he couldn't resist, and he returned to Rhode Island and was caught, and now he tries to cover his tracts. Yet, he cannot produce, or he did not make any effort to show us this girl [sic] that he bought the car from in Tennessee."

State v. Jefferson, supra, forbids prosecutorial comment on the failure of a defendant to present witnesses.[4] We have no doubt that the prosecutor's comments offend the principles enunciated in Jefferson:

"While there is support for a rule that a jury can consider a defendant's unexplained failure to present a witness who, if the defense is genuine, might be expected to corroborate that defense, we believe a better rule was adopted by the court in State v. Caron, 300 Minn. 123, 218 N.W.2d 197 (1974). There the Minnesota Supreme Court declared that a 'prosecutor may not comment on a defendant's failure to call witnesses.' Id. at 127, 218 N.W.2d at 200. The court stated two reasons for its ruling: 'First, such comment might suggest to the jury that defendant has some duty to produce witnesses or that he bears some burden of proof; second, the comment might erroneously suggest to the jury that defendant did not call the witnesses because he knew their testimony would be unfavora-

---

3. Defense counsel made timely objections and requests for cautionary instructions, thus preserving the grounds for this appeal. State v. Pailin, 114 R.I. 725, 339 A.2d 253 (1975); State v. Hull, 18 R.I. 207, 26 A. 191 (1893).

4. Even earlier in this state it was recognized that it is

"the defendant's privilege as well as right, not only to remain silent [himself], but also not to offer any testimony in [his] defence, but to rely upon the presumption of innocence which obtained in [his] favor, and the insufficiency of the evidence produced by the

State, to convict [him]. In other words, the State was bound to prove [him] guilty, without any assistance, either active or passive, on [his] part. To assume in argument, therefore, that testimony for the defence, if offered, would show, more plainly than that put in by the State, that the defendant was guilty, was certainly going somewhat beyond the limit of legitimate inference." State v. Hull, 18 R.I. at 211–12, 26 A. at 192 (failed to preserve this issue for appeal, reversed on other grounds).

ble.'" *State v. Jefferson*, 116 R.I. at 139, 353 A.2d at 199 (footnote omitted).

In spite of the impropriety of such comment, we have recognized that a timely and adequate cautionary instruction given by the trial justice is effective to correct improper reference to the "empty chair." *State v. Sepe*, R.I., 410 A.2d 127 (1980); *State v. Jefferson, supra.* In *Jefferson* this court found sufficient an "instantaneous response" by the trial justice informing the jury that the "comment was improper," 116 R.I. at 136, 353 A.2d at 198, "with the specific understanding that [the defendant] was not obligated to explain anything at all to anyone." *Id.* Again, in *State v. Sepe, supra*, we found a cautionary instruction sufficient because it was given "immediately" and it unambiguously identified the prosecutor's error and explained the burden of proof as it related to the ongoing criminal trial. *State v. Sepe*, R.I., 410 A.2d at 132.

The teaching of previous opinions causes us to conclude that the cautionary instruction must (1) identify the prosecutor's conduct as improper, (2) unequivocally indicate that the jury must disregard it, and (3) unequivocally indicate that since the defendant has no duty to present witnesses or any other evidence, his failure to do so cannot be construed as an admission that the evidence, if produced, would have been adverse. These criteria may be satisfied in as many different ways as there may be circumstances in which the need for a cautionary instruction will arise. We cannot prescribe a specific cautionary instruction to be uttered verbatim when the "empty chair" doctrine is invoked, for the same instruction may be adequate in one case and far less than what is required in another.

The first objectionable comment called attention to the failure of defendant to produce his mother and grandmother. In response to defendant's motion for mistrial, the trial justice declined to pass the case but gave the following cautionary instruction:

"Members of the jury, you'll recall at the outset I said that it's always the obligation of the State to prove every element of the crime beyond a reasonable doubt, as I will define that crime to you later. I'll tell you what the legal elements of this crime are. The burden is on the State to prove its case beyond a reasonable doubt. I told you before, and I'll be telling you again later, that the defendant never has an obligation to prove innocence. Now, at this point, we've had, during the course of the prosecutor's closing argument, some comment concerning whether or not the defendant brought in certain witnesses. I believe he was referring to a mother or grandmother. Now, I do not want you to think of that statement by the prosecutor as meaning that the defendant has to prove his innocence, and I'm sure you will not misunderstand it in that way, and I will remind you again later. The rule is that a defendant never has to prove anything. The State has to prove its case. So, you will please bear [the prosecutor's] remarks concerning the mother and the grandmother not being in the courtroom, in the context in which I have just outlined it for you."

This initial instruction was not adequate. It is not enough to indicate that "a defendant never has to prove anything" and to keep the prosecutor's comments in "context." It is unlikely that a lay juror has a sufficiently facile understanding of the burden of proof in a criminal trial to use it as a context for determining what weight to give prejudicial closing argument. A trial justice must avoid ambiguity whenever possible in remarks to a jury, especially in corrective instructions in response to attorney misconduct. The justice should have told the jury that the prosecutor's argument was improper and, therefore, the impermissible comments must be totally disregarded.

Undeterred by the judicial response to his first comment, the prosecutor again suggested that defendant should have produced the person who allegedly sold him the vehicle. After the second improper com-

ment, a cautionary instruction was requested and given. But before issuing the instruction, the trial justice told the jurors that they were being dismissed early for the day because one of the attorneys had to appear in another courtroom. The brief instruction then given was:

> "Let me say again, I have cautioned you during the State's closing argument, and I caution you again, whenever a prosecuting attorney makes reference to failure to produce a witness, I remind you to keep it in this context; the defendant doesn't have to prove his innocence. The State has to prove guilt."

This instruction was not adequate. The trial justice failed to identify clearly the offending statement and to state unequivocally that it must be disregarded. Also, the instruction failed to explain adequately that a defendant has no obligation to present evidence; therefore, his failure to produce a witness cannot be construed as an admission that the evidence adduced from such witness would have been adverse. The instruction fell short of an explicit declaration that the failure to present a witness on the part of a defendant will not support any unfavorable inference.

Repeatedly this court has cited the immediacy of a cautionary instruction as crucial to its effectiveness. *State v. Sepe*, R.I., 410 A.2d 127, 132 (1980); *State v. Jefferson*, 116 R.I. 124, 140, 353 A.2d 190, 199 (1976). *Cf. State v. Sherman*, 113 R.I. 77, 81–82, 317 A.2d 445, 448 (1974) (cautionary instruction in response to improper comment on defendant's failure to testify in his own defense). In the case at bar the intervening remarks concerning early dismissal constituted a distracting and inappropriate preface for a cautionary instruction. However, we are not convinced that this sequence would have been fatal to the immediacy requirement if the cautionary instruction, when given, had been adequate.

 In light of the facts in this case, it can scarcely be contended that this error

did not prejudice the defendant. His testimony, if believed, effectively rebutted the statutory and circumstantial inferences upon which the state relied to prove knowledge that the property had been stolen.[5] The defendant raised a fundamental factual issue, resolution of which turned upon an evaluation of his credibility. Uncorrected improper prosecutorial suggestions that the defendant failed to buttress his testimony through additional witnesses undeniably must give rise to prejudicial error in a case in which the defendant's credibility is crucial.

For the reasons stated, the appeal is sustained and the judgment of conviction is vacated. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

---

5. *See generally State. v. Kurowski*, 100 R.I. 25, 210 A.2d 873 (1965); *State v. O'Neill*, 53 R.I. 497, 167 A. 263 (1933) (both allowing guilty knowledge to be shown by proof of facts which would have given a reasonable person notice that the property was stolen).