**Supreme Court**

No. 2015-305-M.P.
(K1/14-79A)

|  |  |
|---|---|
| State | : |
| v. | : |
| John Cavanaugh. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |  |
|---|---|---|
| State | : | |
| v. | : | |
| John Cavanaugh. | : | |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.** This case came before the Supreme Court on February 23, 2017, on a writ of certiorari by the defendant, John Cavanaugh (defendant), from judgments of conviction entered in the Superior Court, following a jury trial.[1] The defendant was convicted of one count of first-degree sexual assault and four counts of second-degree child molestation sexual assault.

Before this Court, defendant argues that the Superior Court justice committed reversible error in: (1) failing to strike testimony about defendant's interaction with certain family members after the sexual assault allegations came to light and then failing to give an adequate cautionary instruction to the jury; (2) denying defendant's motion to pass the case after the state alluded to an "empty chair" during cross-examination of defendant and during closing argument; (3) failing to exclude the victim's testimony that she had witnessed defendant inappropriately touching a family friend after she could not be located in order to corroborate the allegation; and (4)

---

[1] Common law certiorari was granted by this Court after defendant failed to file a timely appeal.

denying defendant's motion for judgment of acquittal on two of the counts in the indictment. For the reasons set forth herein, we affirm the judgments of conviction.

**Facts and Travel**

On June 20, 2013, the victim, Danielle M. (Danielle),[2] decided to "stand[] up for [her]self" by contacting the Warwick Police Department and reporting that defendant, her uncle, had sexually abused her, when she was between six and fifteen years old. She claimed that she was no longer "that scared little girl anymore." On January 28, 2014, an indictment was returned, charging defendant with one count of first-degree sexual assault in violation of G.L. 1956 § 11-37-2 and four counts of second-degree child molestation sexual assault in violation of § 11-37-8.3. The case was tried before a jury in November 2014.[3]

The sexual abuse recounted in this case began at a family cookout in Warwick, Rhode Island.[4] Danielle, who was between the ages of eight and ten, was living with her mother's family, her grandmother, aunt, Carol C. (Carol), uncle, defendant, and cousin, John C. (John), in Warwick. Danielle testified that, when she came into the house in her bathing suit, she encountered defendant, who was in the living room. The defendant asked Danielle to sit on his lap, and then "he put his hand down in front of [her] bathing suit and began touching [her] vaginal area in a circular motion while kissing [her] neck and the side of [her] face." This continued for approximately one or two minutes. The defendant also told Danielle that she was going to be "a beautiful girl when [she] got older." Danielle also testified that, during this same

---

[2] For the sake of privacy, the parties will be referred to by their first names.

[3] The case was originally tried in September 2014, but a mistrial was declared when the jury was unable to reach a verdict.

[4] Danielle also recounted two occasions of sexual abuse that occurred while she was living in Massachusetts; she was approximately six years old at that time.

family cookout, she saw defendant in her bedroom with a child named Rosemary, who was a close family friend and who lived in the same building.[5] Danielle stated that she observed defendant "doing the same thing to [Rosemary]" that he had done to her earlier that day. However, despite diligent efforts by the police, Rosemary could not be located. Warwick Police Detective Shaun Turcotte testified regarding the efforts he undertook to locate Rosemary, to no avail.

On another occasion, Danielle testified that she and John—defendant's son—were playing in the family living room when defendant placed a blanket over the two cousins and "told [them] that [they] could touch each other if [they] wanted to." The defendant then put John to bed and joined Danielle in the living room. According to Danielle, defendant placed his hand inside her underwear and "began doing the same thing as the other times, moving his hand around in a circular motion." He again commented on Danielle's beauty and kissed her face and neck.

The next incident occurred when Danielle was around thirteen years of age when she and defendant were watching a movie in defendant's bed. The defendant placed a comforter over Danielle, put his hand up her shirt, and began touching her breast and areola. He also "put his hand down [Danielle's] pants and * * * began doing the same thing as the other times." The final incident occurred after Danielle and her family moved to East Providence when she was around age fifteen. Danielle was spending the night at defendant's house because his home was closer to her school. She recalled that she was lying on the floor and watching television when defendant "got down on the floor" and grabbed her chest over her clothes. The defendant then

---

[5] Danielle testified that Rosemary was approximately three years older than she.

unbuttoned Danielle's pants and inserted his finger into her vagina. She then rolled onto her stomach in order to avoid this assault.[6]

Danielle initially attempted to tell her cousin, Jeffrey L. (Jeff), about the abuse when she was between the ages of eight and ten. Jeff testified at trial and corroborated this testimony, but added that Danielle indicated "that she was joking as like a way so as [he] wouldn't tell anybody." Many years later, on Christmas Eve 2010, when Danielle was having relationship issues, Danielle's mother, Audrey R. (Audrey), asked Danielle if she had ever been abused by anyone. Audrey testified that she began naming male figures in Danielle's life; when Audrey named defendant, Danielle "just looked at [her]." Although she denied having sexual intercourse with defendant, Danielle would not divulge much more. When defendant's wife, Carol, who is Audrey's sister, telephoned on Christmas Day, Audrey confronted defendant, stating: "I know what you did to my daughter. * * * I know what you did to my daughter when she was younger." When Carol asked him what they were talking about, defendant responded, "She's saying I molested Danielle." Audrey testified that she never used the word "molested" when she confronted defendant. The two families never spoke again. At trial, defendant testified and acknowledged that the families became estranged after the allegations, but he denied that he had sexually assaulted Danielle.

The defendant was convicted of all counts in the indictment. The Superior Court justice denied defendant's motion for a new trial and sentenced defendant to life in prison for first-degree sexual assault, and ten years suspended, to run concurrently with the life sentence, on the remaining counts of second-degree child molestation.

---

[6] Because this act involved sexual penetration, defendant was charged with first-degree sexual assault pursuant to G.L. 1956 § 11-37-2.

Because no timely appeal was taken in this case, defendant filed a petition for writ of certiorari, which this Court granted on October 20, 2015.

## Standard of Review

"In reviewing the admission or exclusion of evidence, it is well settled that '[t]he admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of discretion is apparent.'" State v. Peltier, 116 A.3d 150, 153 (R.I. 2015) (quoting State v. Clay, 79 A.3d 832, 838 (R.I. 2013)). It is likewise established "that a decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." State v. Dubois, 36 A.3d 191, 197 (R.I. 2012) (quoting State v. Barkmeyer, 949 A.2d 984, 1007 (R.I. 2008)). "We often have stated that 'the trial justice has a front row seat during the trial so that he can best evaluate the effects of any prejudice on the jury.'" Id. (quoting Barkmeyer, 949 A.2d at 1007). "The ruling of the trial justice * * * is accorded great weight and will not be disturbed on appeal unless clearly wrong." Id. (quoting Barkmeyer, 949 A.2d at 1007).

"When passing on 'a trial justice's denial of a motion for judgment of acquittal, this Court applies the same standard as the trial justice.'" State v. Long, 61 A.3d 439, 445 (R.I. 2013) (quoting State v. Lynch, 19 A.3d 51, 56 (R.I. 2011)). "A motion for a judgment of acquittal should be granted only if the evidence, viewed in the light most favorable to the prosecution, is insufficient to establish the defendant's guilt beyond a reasonable doubt." Id. (quoting State v. Heredia, 10 A.3d 443, 446 (R.I. 2010)). "If, however, a reasonable juror could find the defendant guilty beyond a reasonable doubt, the motion should be denied." Id. (quoting Heredia, 10 A.3d at 446).

Analysis

**Motions to Pass the Case**

The defendant twice moved to pass the case and argued that the state improperly alluded to defendant's failure to produce evidence. First, defendant directs our attention to the state's cross-examination of defendant concerning his wife and son and the fact that they did not contact authorities after the sexual assault allegations were made. According to defendant, this questioning improperly suggested that defendant bore a burden to produce evidence in this case, such that a mistrial was warranted. However, only the cross-examination concerning defendant's wife was preserved for appellate review. The record discloses that during cross-examination of defendant, the state asked about defendant's interaction with his son, John. Because there was no objection to this line of questioning, we deem this issue waived.

Turning to the cross-examination concerning defendant's wife, the following colloquy occurred:

> "Q. And you've talked to your wife since this?
>
> "A. Yes.
>
> "Q. Did you ever tell your wife to give a statement to Detective Turcotte?
>
> "[DEFENSE COUNSEL]: Objection
>
> "THE COURT: Overruled. <u>You can answer yes or no</u>.
>
> "A. I didn't have to tell them.
>
> "Q. She didn't give a statement to Detective Turcotte; right?
>
> "A. He never called her. <u>I sent her the transcripts of the courthouse, of everything that was said. She knows everything that is happening in this court</u>.
>
> "Q. So you sent her all the transcripts of all the testimony from the prior hearings?

"A.     Yes, I did.

"Q.     Okay.  And after she received that, she didn't contact the
        Warwick Police; right?

"A.     No, they didn't contact her.

"Q.     She didn't contact my office?

"A.     You didn't either.

"Q.     But she didn't contact us either?

"A.     No.

        "[DEFENSE COUNSEL]:   Judge, I object and I have a
        motion.

        "THE COURT:   Actually, it's asked and answered. I'm
        going to sustain the last [objection]."  (Emphasis added.)

After the Superior Court justice sustained the objection, defendant did not ask to have

the answer stricken.  The defendant did move to pass the case and argued that the questioning

shifted the burden of proof by creating an impression that defendant had an obligation to produce

evidence.  After the Superior Court justice declined to declare a mistrial, defendant moved to

strike all of the testimony related to defendant's son and wife.  We decline to review that portion

of the motion that relates to defendant's son because this testimony came in without objection,

and thus, the issue was waived.  See State v. Fry, 130 A.3d 812, 826 (R.I. 2016) ("[W]hether

strategic or not, [the] defendant's failure to object places her plaint toward the [prosecutor's]

questions squarely within our 'raise-or-waive' rule and, thus, her contention with regard to these

* * * questions is not preserved for our review."); State v. Moreno, 996 A.2d 673, 684 (R.I.

2010) (holding that the defendant did not object to the trial justice's exclusion of certain

evidence, thereby waiving the argument on appeal); State v. Merced, 933 A.2d 172, 174 (R.I.

- 7 -

2007) ("[A]lleged errors 'not specifically objected to at trial—that is, by an objection that is sufficiently focused so as to call the trial justice's attention to the basis for said objection—are not preserved for consideration by this court on appeal.'" (quoting State v. Brown, 709 A.2d 465, 477 (R.I. 1998))).

Turning to the colloquy concerning defendant's wife, we begin by recognizing that when defense counsel objected to the state's inquiry about whether his wife gave a statement to police, the trial justice directed defendant to answer "yes or no." However, defendant proceeded to give a substantive answer to which no objection was made. It was only after the fifth question was asked and answered that defendant offered an objection, which the trial justice sustained.

"In the context of the examination of a witness at trial, '[w]e give considerable latitude to a trial justice's rulings.'" State v. Mann, 889 A.2d 164, 166 (R.I. 2005) (quoting State v. Gomez, 848 A.2d 221, 237 (R.I. 2004)). We are not persuaded that the trial justice abused his discretion in declining to strike the testimony. "A defendant may be cross-examined not only on the basis of what he specifically states by way of factual information but also in respect to the inferences and conclusions that would naturally and probably be drawn from such testimony." State v. Filuminia, 668 A.2d 336, 338 (R.I. 1995) (citing State v. McDowell, 620 A.2d 94 (R.I. 1993)). The defendant was questioned on direct examination about his home on Washington Street in Warwick; it was defendant's contention on direct examination that he did not know whether Danielle had ever visited that house when his wife lived there alone. When the state asked about an assault that occurred on Washington Street, defendant flatly declared that the incident "could [have] never happen[ed]" because "Danielle ha[d] never been in [that house]." The prosecutor then asked whether it was also Danielle's testimony that defendant's wife, Carol, was present. We are satisfied that this questioning was not a reference into defendant's failure to

produce evidence, but that this inquiry had a bearing on defendant's credibility. In State v. D'Alo, 435 A.2d 317, 320 (R.I. 1981), this Court declared that "[a]ny defendant in a criminal trial who testifies in his own behalf runs the risk of having his credibility impeached. By testifying, he places his own credibility in issue."

A careful review of the cross-examination also reveals that it was defendant who volunteered information and argued with the prosecutor. As noted, when the trial justice directed defendant to answer "yes or no," he did not do so. Also, when defendant was asked whether his wife gave a statement to police, defendant countered that it was the police who never contacted his wife, but that he had sent "the transcripts of the courthouse, of everything that was said." He continued, stating that his wife "kn[e]w[] everything that [was] happening in * * * court." When the prosecutor asked if his wife had contacted authorities after she received the transcript, defendant's response was that no one had contacted her. By volunteering these answers, defendant opened the door to further inquiry. See State v. Rosario, 14 A.3d 206, 217, 218 (R.I. 2011) (affirming the denial of a motion to pass and recognizing that "[the] defendant chose to do more than answer the question that had been asked" by answering "with an extremely broad and unqualified declaration," thereby "open[ing] the door").

Moreover, in order to eliminate any potential prejudice, the trial justice gave a comprehensive cautionary instruction to the jury. At the end of the state's cross-examination of defendant, the trial justice instructed the jury as follows:

> "I want to go through with the jury something that I said at the very beginning of the trial and I want to emphasize now and that's the issue of burden of proof. Certainly this jury can consider all of the evidence and testimony before it by any of the witnesses in the case itself, but the burden of proving the defendant guilty rests and only rests with the State.
>
> "For example, there was certain testimony that the jury

could consider about the defendant's wife and the defendant's son and the jury can consider that. However, the burden of proof never shifts. So, for example, the jury can't say, well, why wasn't someone else called as a witness by the defendant because the defendant has no obligation to put on any evidence. It's the State's obligation to put on the evidence.

"I will go through at the end as well, but I just wanted to remind you it's the State's burden. Certainly, all the evidence that you hear can be used for the jury to consider, the believability of the witness, what to consider, what not to consider as fact. I just wanted to make that point. I will be going through that in more detail in the closing instructions. This comes up often in cases where the defendant chooses to take the stand."

Defense counsel did not object to this instruction. We are satisfied that this cautionary instruction was more than sufficient to cure any potential prejudice in these circumstances. Because we conclude that the trial justice did not commit error in denying the motion to strike, it goes without saying that the trial justice likewise did not err in denying the motion for a mistrial in relation to this questioning.

The defendant again moved for a mistrial after the prosecutor made the following comments during closing argument:

"And I want to talk to you about his actions after that because I asked him about, 'Did you ask your son John to give a statement to Detective Turcotte?' And he said no. And [defense attorney] said, [w]ell, his son wouldn't have anything to add. Danielle is claiming his son was there when he put the blanket over her and his son. But he didn't tell his son to go to the police. He's claiming that Danielle never went to that house on Washington Street. His wife would know that, but he never asked her to give a statement to the police and tell them, no, Danielle was never in that house. He never did that. His actions are not the actions of an innocent person. They're the actions of somebody whose secret finally caught up with him. He finally came face to face with it."

The Superior Court justice refused to pass the case, noting that defendant elected to testify in this case. He explained that he already gave a cautionary instruction concerning the burden of proof and informed the jury that closing arguments are not evidence; he additionally stated that he

would discuss the burden of proof as part of his customary instructions with some additional language.[7]

The defendant posits that the prosecutor's remarks during closing argument, coupled with the testimony on cross-examination, amount to an improper reference to an "empty chair." He directs our attention to State v. Taylor, 425 A.2d 1231 (R.I. 1981) and its progeny. In Taylor, we held that State v. Jefferson, 116 R.I. 124, 353 A.2d 190 (1976), "forbids prosecutorial comment on the failure of a defendant to present witnesses." Taylor, 425 A.2d at 1234. Comments of this nature are considered inflammatory because they may suggest that the defendant has a burden to produce evidence or that "[the] defendant did not call the witnesses because he knew their testimony would be unfavorable." Id. at 1234-35 (quoting Jefferson, 116 R.I. at 139, 353 A.2d at 199). It is well-settled that, although the state may make reference to the quality of a defendant's evidence, it is impermissible to imply that a "defendant was required to offer evidence in his own defense." State v. Williams, 656 A.2d 975, 980 (R.I. 1995).

However, this Court also has declared that potential prejudice from improper comments

---

[7] The Superior Court justice instructed the jury as follows:

> "Always bear in mind that the defendant does not have to prove or disprove anything, nor does a defendant have any obligation to disprove that which the State asserts or claims. The defendant has no obligation to call any witnesses, and you may not speculate upon what another witness who did not testify may have said during the course of the proceedings.

> "The burden of proof is on the State from the beginning to the end of the trial. It never shifts. It is the State which has the burden of proof beyond a reasonable doubt to prove each and every element of the offenses under your consideration.

> "* * *

> "As I instructed you at the beginning of the trial, a defendant is under no obligation to prove anything or present evidence."

by the prosecutor may be cured by a timely and adequate cautionary instruction:

> "[T]he cautionary instruction must (1) identify the prosecutor's conduct as improper[;] (2) unequivocally indicate that the jury must disregard it[;] and (3) unequivocally indicate that since the defendant has no duty to present witnesses or any other evidence, his failure to do so cannot be construed as an admission that the evidence, if produced, would have been adverse." Taylor, 425 A.2d at 1235.

Although the cautionary instruction given in this case did not meet the Taylor standard, we are satisfied that, in the context of this case, that precise instruction was unnecessary, because the prosecutor's comments during closing argument did not rise to the level of an improper reference to an "empty chair." It was defense counsel, during his final argument, who specifically called attention to the state's cross-examination of defendant:

> "[The prosecutor] asked [defendant], 'Did you tell your son to give a statement to the police?' First of all, since when is it [defendant's] responsibility? Why didn't Detective Turcotte call [defendant's] wife? Why didn't Detective Turcotte call [defendant's] son? He was in charge of this investigation. He had the obligation of interviewing witnesses. That was his responsibility. So why didn't he do that? Is he interested in finding the truth or is he interested in just getting a conviction? The [s]tate has the burden of proving the case.

> "But what does [the prosecutor] think that [defendant's] son or wife would be able to help in this case; right? Because remember these allegations are from a period of when she was six years old to fifteen, for nine years. Does he think they would be able to get on the stand and say, oh, no, [defendant] was never alone with Danielle * * *, never. Never happened. There was always someone in the room with him; right? Because anything short of that testimony is not compelling. And even if they said that, it's not believable. Think about your relationships, where you've been, cookouts, parties, you've gone to friends or relative's parties. There are children there. Can you ever know for certain that you were never alone with a child at any of those events, any cookouts, any picnics, any parties, anything, can you, over a period of nine years?

> "So when the [s]tate says, 'Why didn't they call Detective

- 12 -

Turcotte[,] he should have called them and f[ou]nd out if they had any information that would either help the [s]tate or hurt the [s]tate because they're supposed to investigate. They're supposed to be neutral. They're not supposed to make up their mind about the charge until they thoroughly investigate the case and he did not call them, he did not meet with them, and he didn't go down to Florida to interview them."

Clearly, defense counsel referenced the cross-examination of defendant and the failure of the police to contact defendant's wife and son, which he characterized as the state's failure to investigate. A prosecutor is permitted to respond to defense counsel's remarks made during closing argument. See State v. Valenti, 772 A.2d 127, 131 (R.I. 2001) (assigning no error to the prosecutor's response during his closing argument to statements made by defense counsel during his closing).

"A prosecutor is given considerable latitude in closing argument, as long as the statements pertain only to the evidence presented and represent reasonable inferences from the record." State v. Boillard, 789 A.2d 881, 885 (R.I. 2002). Here, the prosecutor's comments dovetailed a summary of defendant's actions after the initial disclosure and were not comments on defendant's failure to produce evidence. See id. ("The probable effect of the prosecutorial statements on the outcome of the case must be evaluated by examining the remarks in the context in which they were made." (citing State v. Brown, 522 A.2d 208, 211 (R.I. 1987))). In this case, the prosecutor's remarks specifically relate to defendant's performance on the witness stand and his interactions with his son and wife in the face of these disclosures.

The defendant draws our attention to cases of improper prosecutorial comment that are not similar to the case at bar. In Taylor, 425 A.2d at 1234, the prosecutor argued to the jury that "([t]he defendant) said his mother sent him money, his grandmother (sic). I didn't see them come in to testify. He raised that issue. I didn't see them come in here[.] * * * Yet, he cannot

produce, or he did not make any effort to show us this girl (sic) that he bought the car from in Tennessee." Furthermore, in State v. White, 512 A.2d 1370, 1373 (R.I. 1986), the state, in responding to defense counsel's argument, told the jury that the defendant had failed to present a variety of witnesses: "You didn't hear from Carolyn Manfredi, that's true. What do you know about her? Girl friend of this Defendant. What would you expect her to say? * * * You heard testimony about the LaFonds. What testimony did you hear? They were riding with this Defendant. They were friends of the Defendant." In State v. Turner, 561 A.2d 869, 873 (R.I. 1989), the state argued, "Where is Mr. Saunders? Why didn't we hear from Mr. Saunders? * * * That door has been open. The State doesn't have a lock on that door[,]" and in State v. LaPointe, 525 A.2d 913, 914 (R.I. 1987), the state argued that "the defendant could have subpoenaed the doctor to testify." These cases are clear examples of improper arguments by the state. We are satisfied that is not the case under review. Accordingly, we are of the opinion that the Superior Court justice did not err in denying the motion for a mistrial in relation to the prosecutor's closing remarks. The record before us discloses that the jury was properly instructed on the burden of proof on multiple occasions by the court.

We caution, however, that comments of this nature may approach the line of improper prosecutorial conduct. In the case at bar, however, defendant elected to testify, placed his credibility in issue, and then volunteered information about his wife. It was defense counsel who discussed the state's cross-examination of defendant during his closing remarks to the jury. These circumstances persuade us that, while coming close to the line of reversible error, the prosecutor did not cross it. However, we caution prosecutors to refrain from engaging in this type of conduct and to bear in mind that the state always bears the burden of proof in a criminal prosecution.

**Rule 404(b) of the Rhode Island Rules of Evidence**

The defendant assigns error to the trial justice's decision to admit evidence that Danielle witnessed defendant assaulting another small child. Specifically, Danielle was permitted to testify that she saw defendant inappropriately touch Rosemary at the family cookout, on the same day that Danielle was first sexually assaulted by defendant. Defense counsel objected on the basis that this evidence was not relevant under Rule 402 of the Rhode Island Rules of Evidence[8] and, if relevant, was inadmissible under Rule 403 of the Rhode Island Rules of Evidence's[9] balancing test because Rosemary could not be located to corroborate the allegation. The state responded that it was offering the evidence under Rule 404(b), which allows for the admission of evidence in certain circumstances. Although defendant clearly anticipated this testimony, there was no pretrial motion in limine seeking to exclude this evidence.

We proceed to examine whether the Superior Court justice abused his discretion in admitting the testimony under Rule 404(b), or whether it should have been excluded in accordance with Rule 403. "When performing [an] abuse of discretion analysis in the context of Rule 404(b), this Court first looks to the scope of allowable proof under the rule." Peltier, 116 A.3d at 153. "In reviewing a trial justice's admission of Rule 404(b) evidence, this Court is 'disinclined to perceive an abuse of discretion so long as the record contains some grounds for supporting the trial justice's decision * * *.'" Clay, 79 A.3d at 838 (quoting State v. Ciresi, 45 A.3d 1201, 1211 (R.I. 2012)). Rule 404(a) excludes "[e]vidence of a person's character or a trait

---

[8] See Rule 402 of the Rhode Island Rules of Evidence ("All relevant evidence is admissible * * *.").

[9] See Rule 403 of the Rhode Island Rules of Evidence ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

of the person's character * * * for the purpose of proving that he or she acted in conformity therewith on a particular occasion"; nor are "other crimes, wrongs, or acts * * * admissible to prove the character of a person in order to show that the person acted in conformity therewith." Rule 404(b). Such conduct, however, is admissible under Rule 404(b) for other purposes, such as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that [the] defendant feared imminent bodily harm and that the fear was reasonable." Id. "[T]he list of admissible purposes contained within this rule provides 'examples, rather than a complete enumeration, of permitted purposes.'" State v. Martinez, 59 A.3d 73, 85 (R.I. 2013) (quoting Ciresi, 45 A.3d at 1213).

In the context of sexual assault prosecutions, "evidence of a defendant's prior sexual misconduct cannot be admitted to prove that 'defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offenses with which he is charged.'" State v. Mohapatra, 880 A.2d 802, 806 (R.I. 2005) (quoting State v. Quattrocchi, 681 A.2d 879, 886 (R.I. 1996)). Nonetheless, prior sexual misconduct that is "nonremote" and "similar" to the crime on trial is admissible under Rule 404(b). See Mohapatra, 880 A.2d at 806. "Offenses will be considered sufficiently 'nonremote' and 'similar' when they are 'closely related in time, place, age, family relationships of the victims, and the form of the sexual acts.'" Id. (quoting State v. Brigham, 638 A.2d 1043, 1045 (R.I. 1994)). In the case at bar, the similarity between the sexual acts of child molestation committed upon Danielle and allegedly upon Rosemary is striking to say the least. The assaults occurred on the same day and at the same party; Danielle and Rosemary were around the same age; they lived in the same building as defendant; and the form of the sexual acts likewise was the same—defendant placed his hand in the bathing suit bottom of both girls. We can conceive of few instances in which two sexual

assaults could be closer in time and manner.

However, such evidence is only admissible in "proving the charge lodged against the defendant" and when "reasonably necessary." Mohapatra, 880 A.2d at 806 (quoting State v. Jalette, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978)). In Mohapatra, we held that similar incidents of sexual assault are relevant to proving that the defendant committed the act "with the purpose of 'sexual arousal, gratification, or assault.'" Id. at 808 (quoting § 11-37-1(7)). Therefore, defendant's contemporaneous assault of Rosemary can serve as proof of a pattern of behavior. We likewise recognized in Mohapatra that prior incidents of sexual assault are reasonably necessary to the state's case when the victim's credibility is placed at issue. Id. We are cognizant that this is a case in which the evidence revealed a crime committed in private with a significant lapse of time between the sexual assaults and the prosecution. The credibility of the complainant was placed at center stage. We therefore are persuaded that this evidence meets the test of relevancy and necessity to the state's case. It is not cumulative.

The defendant's attempt to distinguish these principles by homing in on Rosemary's unavailability as a witness is unavailing. It is defendant's contention that, by presenting this self-serving testimony that could not be verified because Rosemary, despite diligent efforts, could not be located, the state was able to corroborate Danielle's testimony. Although defendant acknowledges that certain prior incidents of sexual assault are reasonably necessary when the state's case rests on credibility, he argues that in this context Danielle, in effect, corroborated her own testimony. This contention is incorrect. Our rules do not limit evidence of prior misconduct to testimony by the victim of that conduct, and we decline to make such a pronouncement. Danielle offered testimony about her own observations. Under Rule 602 of the Rhode Island Rules of Evidence, "[a] witness's testimony is inadmissible * * * only if the trial justice finds

that the witness could not have actually perceived or observed that to which he or she purports to testify." State v. Grant, 840 A.2d 541, 546 (R.I. 2004) (quoting State v. Addison, 748 A.2d 814, 821 (R.I. 2000)). "Rule 602 * * * does not require that the witness' knowledge be positive or rise to the level of absolute certainty." State v. Ranieri, 586 A.2d 1094, 1098 (R.I. 1991). According to Danielle, she witnessed this assault first-hand. She therefore testified from personal knowledge about her observations that fateful day, and she was subject to cross-examination, the unavailability of Rosemary notwithstanding.

We pause to note however, that the Superior Court justice did not engage in a Rule 403 balancing test to determine the probative value of this evidence, nor was he pressed to do so by counsel after the state submitted that the evidence was offered under Rule 404(b). Nonetheless, the Superior Court justice should have undertaken a Rule 403 analysis when deciding to admit the evidence. See State v. Cook, 45 A.3d 1272, 1280 (R.I. 2012) (reaffirming that Rule 403 is inherent in a Rule 404(b) analysis, but holding that a trial justice does not have to engage in a Rule 403 analysis, if an objection is not made). We deem this error harmless because the evidence was correctly admitted, and its probative value outweighed any potential prejudice.

"A Rule 403 analysis requires the trial justice to not only examine the evidence in the context of the case on trial, but to balance the evidence to determine whether its probative force 'is substantially outweighed by the danger of unfair prejudice, * * *.'" State v. Patel, 949 A.2d 401, 413 (R.I. 2008) (quoting Rule 403). We are not convinced that this testimony was unfairly prejudicial to defendant under Rule 403. See State v. Gaspar, 982 A.2d 140, 148-49 n.12 (R.I. 2009) ("[B]ecause most evidence offered at trial is inherently prejudicial, [o]nly unfairly prejudicial evidence is barred under Rule 403 * * *[.]" (quoting 29 Am. Jur. 2d Evidence § 338 at 360 (2008))). As noted, Danielle's credibility was at issue throughout the entire trial. She

testified that she had personal knowledge of the alleged sexual assault upon Rosemary. See Mohapatra, 880 A.2d at 808 ("When charges of sexual abuse hinge upon a credibility contest between [a] defendant and * * * complainant, relevant evidence of prior sexual misconduct is reasonably necessary to support the complainant's testimony."). The jury was well aware that Rosemary could not be located and that this allegation was unsupported by any other evidence. Before this Court, defendant paints Rosemary as "a little girl who was never seen, never heard, but whose presence haunted the proceedings from beginning to end." Although defendant contends that the state improperly gave reference to an "empty chair," it is actually the defense that did so explicitly by arguing that "[w]ithout Rosemary testifying I would submit [the state] cannot prove [its] case beyond a reasonable doubt."

Finally, the trial justice gave the following timely cautionary instruction:

> "And I just want to make clear to the jury there was testimony that the Court allowed in about the incident that the witness just described when she was leaving the bathroom and was going in the bedroom. I just want the jury to understand that you cannot consider that evidence of these acts to show that the defendant, if you get that far, has a propensity to commit the crime for which he is currently charged at this point. It is admissible for other purposes for the jury to consider such as motive, opportunity, intent and I'll be going into that. But the jury can't say, for example, well, because he did such and such, he had a propensity to do other things."

We are satisfied that this cautionary instruction served to eliminate any unfair prejudice that defendant may have faced from this testimony. See State v. Mitchell, 80 A.3d 19, 29, 30 (R.I. 2013) (determining that "trial justice fulfilled his obligation to give a sua sponte instruction on the Rule 404(b) evidence" and did not abuse his discretion in admitting "evidence of [the] defendant's other sexual misconduct"); State v. Garcia, 743 A.2d 1038, 1052 (R.I. 2000) (noting that "in sexual assault cases * * * a trial justice is required to issue a cautionary instruction to the

jury regarding the limited use of Rule 404(b) evidence").

## Motion for Judgment of Acquittal

The defendant argues that the trial justice erred in denying his motion for judgment of acquittal on counts 4 and 5 of the indictment because Danielle did not testify that defendant touched her vagina in relation to those counts. Counts 4 and 5 were charged under § 11-37-8.3, which prohibits sexual contact with a person under the age of fourteen. "Sexual contact" is defined as "the intentional touching of the victim's or accused's intimate parts." Section 11-37-1(7). "Intimate parts" is defined as "genital or anal areas, groin, inner thigh, or buttock of any person or the breast of a female." Section 11-37-1(3). We are mindful that, in passing on a motion for judgment of acquittal, the trial justice is compelled to view the evidence in the light most favorable to the state and draw every reasonable inference consistent with guilt. See State v. Grantley, 149 A.3d 124, 131 (R.I. 2016).

Although Danielle did not explicitly offer testimony that defendant's hand touched her vagina in describing every occasion of sexual assault, she clearly testified that defendant placed his hand in her bathing suit and "began touching [her] in [her] vaginal area in a circular motion." When recounting the subsequent occasions of sexual abuse, Danielle testified that defendant placed his hand in her underwear and "began doing the same thing as the other times." This later reference to defendant's conduct during an earlier assault—that he touched her vaginal area in a circular motion—satisfies the requirement that Danielle's testimony was precise and specific. See In re B.H., 138 A.3d 774, 782 (R.I. 2016) (affirming that "'precise and specific testimony is necessary to support' a prosecution for first-degree sexual assault or first-degree child molestation" (quoting State v. McDonald, 602 A.2d 923, 925 (R.I. 1992))).

We are satisfied that Danielle's testimony on counts 4 and 5 sufficiently refers back to an

earlier assault in which the defendant was "doing the same thing as the other times" and creates a nexus between her testimony and the body part delineated in the statute, her genital area. See Brown, 709 A.2d at 481 ("Just as a reviewing court should not pick out one isolated statement from a slew of jury instructions without considering all the jury instructions as a whole, * * * so too should it not pick one isolated statement in a witness's testimony out of context from the whole of it." (citing State v. Peguero, 652 A.2d 972, 974 (R.I. 1995))). Because we are of the opinion that a reasonable jury could find the defendant guilty beyond a reasonable doubt on these charges, we conclude that the Superior Court justice properly denied the defendant's motion for judgment of acquittal on counts 4 and 5.

## Conclusion

For the reasons stated in this opinion, we affirm the judgments of conviction. The papers in this case shall be remanded to the Superior Court.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State of Rhode Island v. John Cavanaugh. |
| **Case Number** | No. 2015-305-M.P. (K1/14-79A) |
| **Date Opinion Filed** | April 28, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For State:<br><br>Virginia M. McGinn<br>Department of Attorney General<br><br>For Defendant:<br><br>Lara E. Montecalvo<br>Office of the Public Defender |