April 25, 2018

**Supreme Court**

No. 2015-255-C.A.

(P1/13-1113A)

(Dissent begins on page 26)

State                          :

    v.                         :

Jesse S. Perry.                :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                                    :

v.                                       :

Jesse S. Perry.                          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The defendant, Jesse S. Perry (defendant or Perry),

appeals from a judgment of conviction on three counts following a jury-waived trial in the

Superior Court.  A justice of the Superior Court found the defendant guilty of two counts of first-

degree child molestation sexual assault in violation of G.L. 1956 § 11-37-8.1, and one count of

second-degree child molestation sexual assault, in violation of G.L. 1956 § 11-37-8.3.  The trial

justice sentenced the defendant to two life sentences, to run concurrently, on each count of first-

degree child molestation sexual assault, and a thirty-year sentence, to run concurrently with the

life sentences, on the count of second-degree child molestation sexual assault.  For the reasons

set forth herein, we affirm the judgment of the Superior Court.

### I

### Facts and Travel

In May 2012, Sergeant Steven St. Pierre of the Bristol Police Department was conducting

an investigation concerning possible child molestation when the officer came into contact with

Brian.[1]  Brian directed Sgt. St. Pierre to contact Adam, the complainant, whom Brian alleged

defendant had molested.  Adam came forward to the Bristol Police Department; and, as a result

---

[1] We use fictitious names to protect the privacy of the complaining witness and the other
witnesses who testified about defendant's sexual misconduct.

of Adam's disclosure to authorities, defendant was arrested on January 4, 2013. On April 12, 2013, the state charged defendant with nine counts: three counts of first-degree child molestation sexual assault, in violation of § 11-37-8.1 (counts 1, 2, and 3); two counts of second-degree child molestation sexual assault, in violation of § 11-37-8.3 (counts 4 and 5); two counts of first-degree sexual assault, in violation of G.L. 1956 § 11-37-2 (counts 6 and 7); and two counts of second-degree sexual assault, in violation of G.L. 1956 § 11-37-4 (counts 8 and 9).

## A

### The State's Motion *In Limine*

On May 15, 2013, the state filed a motion *in limine* in the Superior Court seeking to present testimony from five witnesses about alleged incidents of defendant's prior sexual misconduct that had occurred between the years 1977 and 1980.[2] The state argued that the witnesses' testimony was admissible pursuant to Rule 404(b) of the Rhode Island Rules of Evidence, which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith[,]" but can be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable." The state maintained that nearly all the witnesses who had come forward with allegations of sexual abuse by defendant were involved in youth sports in Bristol, had a difficult home life, and were offered a "sports massage" prior to the sexual abuse. Accordingly, the state asserted that defendant's prior sexual misconduct was "probative of [his] *modus operandi* of preying on vulnerable young boys[,]" and

---

[2] In the state's memorandum in support of its motion *in limine*, the state asserted that the incidents of defendant's alleged prior sexual misconduct occurred between the years 1978 and 1984. However, in the state's summary of the anticipated testimony, the alleged incidents occurred between 1977 and 1980.

tended to prove defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.

The defendant opposed the state's motion *in limine* and maintained that the testimony was inadmissible under Rule 404(b). He cited to *State v. Mohapatra*, 880 A.2d 802 (R.I. 2005), for the proposition that "when the evidence offered proves prior sexual misconduct with someone other than the complainant, 'nonremote similar sexual offenses' are admissible under the exceptions of Rule 404(b)." *Mohapatra*, 880 A.2d at 806 (quoting *State v. Jalette*, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978)). The defendant asserted that the alleged incidents of prior sexual misconduct did not satisfy the requirements of nonremoteness and similarity as decreed by this Court. He argued that the incidents were remote from the charged acts because they occurred between the late 1970s and early 1980s, while the charged acts occurred between 1990 and 1999. Further, defendant maintained that the charged acts were not consistent with the *modus operandi* of the alleged prior sexual misconduct, which defendant summarized as follows: "[defendant] would use the opportunity of a sports injury, claim that he was pursuing training in massage therapy, invite the victims to his home, and would inappropriately touch the victims during the course of a 'sports massage.'" In contrast, defendant noted that Adam's alleged abuse was not an isolated incident that occurred under the guise of a sports massage—rather it allegedly occurred over the nine-year period during which Adam lived with defendant.

The defendant alternatively argued that the prior sexual misconduct was inadmissible under Rule 403 of the Rhode Island Rules of Evidence because it had little probative value and was "unquestionably" prejudicial. Specifically, he again asserted that the alleged prior sexual misconduct was too remote and dissimilar to be probative of his *modus operandi*. With respect to the evidence's risk of prejudice, defendant maintained that it was likely "that a jury would

either seek to punish [defendant] for those uncharged actions or use the 404(b) evidence for its impermissible purpose * * *."

Before the trial commenced, the trial justice heard the parties on the state's motion *in limine*. The state cited to *State v. Mitchell*, 80 A.3d 19 (R.I. 2013), for the principle that when a defendant is charged with second-degree child molestation sexual assault, which is a specific-intent crime that requires proof that the defendant touched the complainant "for the purpose of sexual arousal, gratification, or assault[,]" similar instances of sexual misconduct are admissible to show the defendant's intent. *Mitchell*, 80 A.3d at 29 (quoting *State v. Coningford*, 901 A.2d 623, 630 (R.I. 2006)). The state then discussed the similarities between the alleged prior sexual misconduct and the charged act; each incident occurred when the children were around the same age, in the same location, and involved the same act of sexual misconduct. The state maintained that the alleged prior sexual misconduct demonstrated defendant's "systematic and repeated molestation of these young boys."

The defendant disputed the state's contention that the prior sexual misconduct was probative of his intent to self-gratify. He argued that the trial justice would have to infer that "when [defendant] finished with the sports massage, he goes into a bathroom[] * * * [a]nd then when he comes back, the witnesses are going to draw the inference that somehow he saw something, in the form of a child's penis, went behind a closed door, and gratified himself." The defendant maintained, however, that there was no evidence of self-gratification.

The trial justice rendered her decision on the state's motion *in limine*. Although she was mindful of the time span between the alleged prior sexual misconduct and the charged acts, she found that "[t]he similarities between the relationship of the parties, the nature of the alleged assault and the location of the alleged assault would be so strong that the [c]ourt would find that

the span of time between the alleged assaults * * * is not rendered so remote that the [c]ourt shall preclude the evidence." She determined that the 404(b) evidence was relevant to establish motive, opportunity, intent, preparation, plan, identity, and absence of mistake or accident. Accordingly, the trial justice granted the state's motion *in limine* and allowed the state to present testimony from witnesses about prior sexual misconduct perpetrated by defendant.

**B**

**The State's Case**

A jury-waived trial began on November 18, 2014. Below we summarize the relevant testimony adduced at trial.

The complaining witness, Adam, testified. At the time of trial, he was thirty-three years old. He testified that he first met defendant when he was eight years old and defendant was the coach of his youth football team. Adam said that defendant gave him rides to practices and games because his parents "were always working." Adam described the progression of his relationship with defendant: "It grew into going out to dinner, going to movies, and then finally it grew into sleeping over during the weekends and then moving in." He testified that he moved in with defendant at the age of twelve and described this development:

> "My parents saw a huge difference in my attitude and everything. I mean, I had two older brothers who were hell for my mom, and she basically thought it was best in my, you know, interest and pretty much allowed me to stay there. He was a teacher. I mean, to them, you know—something holy, I guess, because it would save me from going with my brothers. Both my brothers got deported. He helped me in every single way he could so my parents thought it was the best thing for me."

Adam testified about the first incident of sexual abuse. He was approximately nine years old and was at defendant's house watching a television show about cancer and circumcision. Adam, unsure of whether he was circumcised, asked defendant, who, in turn, asked Adam to

show him his penis. Adam testified that defendant began washing Adam's penis in the shower. Thereafter, Adam asked defendant what "a normal penis" looked like, and in response defendant showed Adam his penis and told him if he rubbed it, it would get bigger. Adam testified that defendant's penis was erect and that defendant ejaculated. Adam testified that this incident occurred in defendant's bedroom, on defendant's bed.

Adam testified that he did not tell his parents about the incident because he was afraid and he did not understand what had happened. He said that, after this first incident, the touching continued every weekend and "[i]t turned into getting in the shower together, washing each other." Adam characterized these incidents as him masturbating defendant and testified that they continued until he was approximately seventeen-and-a-half years old.

In his testimony, Adam discussed the first incident of fellatio, which occurred when he was approximately eleven or twelve years old. He stated that defendant performed fellatio on him at least once per week, but it progressed to three to four times per week. Adam testified that, shortly after defendant began performing fellatio on him, he began performing it on defendant. He testified that the incidents took place in defendant's bedroom, where he regularly slept with defendant. Adam moved out of defendant's house when he went to college; after he dropped out of college, Adam moved in with his brother. He did not move back in with defendant because he did not want the sexual abuse to reoccur.

The state then introduced the testimony of three 404(b) witnesses, beginning with Colin.[3] Colin, who was forty-seven years old at the time of trial, testified about an incident that occurred when he was approximately twelve years old. He went to defendant's house for a sports massage after pulling a muscle in his groin during football practice. Colin testified that

---

[3] As previously noted, we use fictitious names to protect the privacy of the witnesses.

defendant was giving him a full body massage, then told him to roll over, removed Colin's underwear, and moved Colin's penis out of the way of the area he wanted to massage. He described defendant as "shaking very violently" while this happened. Colin testified that his penis was not injured.

Colin discussed his involvement with a 2004 investigation of defendant. He said that he was at the beach with his brother and friends when they began discussing "the whole system of the Perry brothers and how they were always around kids' houses * * *." He said that he became upset thinking about what defendant did to him and he gave a statement to the Bristol Police Department about the incident.

Next, David, who was forty-six years old at the time of trial, said that he first met defendant when he was nine years old and tried out for a little league baseball team that defendant coached. David testified about an incident of sexual misconduct by defendant that occurred when he was approximately nine or ten years old. Because David intended to play football in the fall, defendant repeatedly badgered him about getting a jockstrap and a cup. He testified that defendant asked him "[m]any, many times" to show his genitals to him so that defendant could tell David what cup size he needed. David eventually complied in a shed on defendant's property; he pulled down his pants and underwear. He testified that defendant then fondled his genitals. David said that defendant never told him what cup size he needed.

David discussed another incident that occurred when he was approximately nine or ten years old. While driving David home from a team outing at the movies, defendant told David that he had to talk to him. David testified, "[h]e basically took [me] by my shoulders very tight * * * and he proceeded to tell me that he was falling in love with me." In 2004, David contacted the Bristol Police Department and gave a statement about the incident. He was prompted to

come forward about the incident after discussing defendant at the beach with his brother and friends, including Colin. David said that he went to the police because "[he] didn't want other kids to go through * * * what happened to [him]. It was a known secret. People knew what was going on."

Brian, who was forty-five years old at the time of trial, testified next. He knew defendant because, as a child, he lived on the same street as defendant, and defendant coached the little league baseball team with which Brian was involved. He testified about an incident involving defendant that occurred when Brian was approximately ten years old. He said that defendant invited him over to his house to show him nunchucks, knowing that Brian was interested in martial arts.[4] While Brian sat on the edge of defendant's bed in his bedroom, defendant began rubbing his back and asked Brian if he wanted a massage. Brian testified that defendant asked him to take his shirt off, defendant pulled Brian's shorts off, and "he started to work his way down towards [Brian's] private areas." Brian testified that "[defendant's] hands were on my penis. I mean, I don't know any other way to describe it, rubbing * * *." He approximated that the incident lasted between five and ten minutes. After this first incident, Brian testified, defendant gave him three to five more "massages," but they were not to the degree of the first incident.

Brian also testified about his relationship with Adam, the complaining witness. Brian was in his early twenties when he first met Adam, who was approximately nine or ten years old at the time. They became good friends and Adam ended up working with Brian. Brian testified that, at some point in their friendship, he and Adam confided in each other about what defendant did to them.

---

[4] Nunchucks are a martial arts weapon.

The state then rested its case and dismissed count 2 pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.[5]

## C

### The Defendant's Motion to Dismiss

The defendant then moved pursuant to Rule 29(b) of the Superior Court Rules of Criminal Procedure, which provides that "[i]n a case tried without a jury, a motion to dismiss may be filed at the close of the [s]tate's case to challenge the legal sufficiency of the [s]tate's trial evidence." The defendant argued that the counts were duplicitous. He referenced *State v. Saluter*, 715 A.2d 1250 (R.I. 1998), where this Court addressed the issue of "duplicity," which is "the joining of two or more offenses, however numerous, in a single count of an indictment." *Saluter*, 715 A.2d at 1253.

On December 16, 2014, the trial justice issued a decision on defendant's motion to dismiss. At the outset, she noted that the state dismissed count 2, and it also dismissed count 9 "after the [c]ourt brought an inconsistency to the attention of the parties * * *." She then recited the standard for deciding a motion to dismiss, noting that "she is required to weigh and evaluate the trial evidence, to pass upon the credibility of the trial witnesses and engage in inferential processes impartially, not being required to view inferences in favor of the nonmoving party and against the moving party." The trial justice then made credibility findings. She noted that the case depended on the credibility of Adam, whom she deemed to be a credible witness. The trial justice, on the record before her, found defendant to be "a pedophile who developed a sexual relationship with [Adam], which relationship continued throughout his childhood and into his

---

[5] Rule 48(a) of the Superior Court Rules of Criminal Procedure provides that "[t]he attorney for the [s]tate may file a dismissal of an indictment, information, or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

teens. When their sexual contact began, [defendant] convinced the young boy that it was normal, and their sexual relationship became part of their lives together, part of [Adam's] life." She further found that "[d]efendant had a pattern of engaging in sexual contact with young boys he either met through his work as an athletic coach or in the case of [Brian], who he met as a neighbor, but who he developed a coach/player relationship with."

The trial justice accepted the testimony of the 404(b) witnesses and found that the testimony satisfied Rule 404(b)'s requirements despite the fact that Brian, Colin, and David testified about single acts of sexual misconduct by defendant, whereas Adam endured regular, long-term sexual abuse, noting that defendant had a greater opportunity to groom and abuse Adam.

The trial justice then discussed the specific counts charged against defendant. The trial justice addressed counts 1 and 3, which charged defendant with first-degree child molestation sexual assault. Specifically, count 1 related to fellatio by Adam on defendant, and count 3 related to the first incident of fellatio by defendant on Adam. The trial justice regarded Adam's testimony on each of these incidents as credible, and accordingly denied defendant's motion to dismiss with respect to counts 1 and 3.

The trial justice also denied defendant's motion to dismiss with respect to count 4, which charged defendant with second-degree child molestation sexual assault, specifically the first incident of sexual contact, when defendant touched Adam's penis. She regarded as credible Adam's testimony about this incident, which he said occurred in the shower under the guise of washing Adam's uncircumcised penis. She dismissed count 5, however, which also charged defendant with second-degree child molestation sexual assault, because she found it duplicitous in view of that fact that the indictment "[did] not identify this particular act of second degree

sexual assault from any other act of second degree sexual assault testified to by [Adam] as having occurred in the bedroom prior to his 14th birthday or on or before his 14th birthday."

With respect to counts 6, 7, and 8, which charged defendant with first-degree and second-degree sexual assault, the trial justice noted that these counts required the state to prove that defendant used force or coercion. Although the trial justice found that the state proved the requisite force, she dismissed counts 6, 7, and 8 because she found a duplicity issue. In sum, the trial justice denied defendant's motion to dismiss with respect to counts 1, 3, and 4, and granted the motion with respect to counts 5, 6, 7, and 8.

**D**

**The Defendant's Case**

The defendant testified. He denied having any sexual contact with Colin, David, and Brian, and said that Colin's testimony was the only one with any truth to it because he had indeed given Colin a heat treatment for a groin injury. The defendant rebutted David's testimony that defendant had fondled his genitals under the guise of fitting him for a jockstrap and cup; he testified that the incident occurred at the football team's practice field while defendant was fitting other children for their football gear and that he had David press his own hands against his genitals to see what cup size would best fit him. The defendant explained Colin and David's allegations against him as "a one upmanship kind of thing." He testified that Brian made up the allegations because he "had an ax to grind."

The defendant then discussed Adam. He said that he used to give Adam rides to and from football practice. After the football season ended, defendant testified that Adam would call him and ask if he could come over to his house. The defendant testified that he "put him off a few times," but that eventually he would pick up Adam, and Adam would spend the day at his

house. The defendant stated that Adam began staying the night because he "started begging" to stay over. He testified that Adam lived with him between the ages of twelve and eighteen.

The defendant denied having a sexual relationship with Adam or ever touching him in a sexual manner. He was asked about Adam's testimony concerning the first incident of sexual abuse, when defendant allegedly touched Adam's penis under the guise of washing it. The defendant testified that he instructed Adam on how to wash himself, but denied touching Adam's penis or showering with Adam. He testified that Adam's allegations were untrue, and he accused Adam of being a liar.

**E**

**The Trial Justice's Decision**

On January 5, 2015, after the close of the evidence, the trial justice rendered her decision. She discussed the remaining counts of the indictment: counts 1 and 3, which charged defendant with first-degree child molestation sexual assault, and count 4, which charged him with second-degree child molestation sexual assault. The trial justice then summarized the evidence adduced at trial. She began by discussing the testimony of the 404(b) witnesses. She determined that the testimony of Brian, Colin, and David satisfied the requirements of Rule 404(b) given the similarity of their ages, their relationships to defendant, and the acts of sexual misconduct. She found their testimony to be "probative of a plan, a design, a signature offense absence of mistake or accident." She regarded all three witnesses' testimony as credible, and she rejected defendant's claim that Colin and David's allegations were the result of "one upmanship." She stated: "These were not adolescent boys getting together, one with a better story to share than the other. These were mature men. And they weren't just blabbing to one another, boasting. They were sharing events that led them to the police department to make criminal complaints."

The trial justice also rejected defendant's testimony that he "resisted [Adam's] needy efforts to spend time with him," finding it not believable given the respective ages, experiences, and education levels of defendant and Adam. She deemed not credible defendant's explanation of Adam's testimony about the first incident of sexual assault and his insistence that he solely instructed Adam on how to wash his penis and did not touch it. She characterized his testimony as a feeble attempt at disputing Adam's testimony. After considering all the evidence, the trial justice found defendant guilty on counts 1 and 3, first-degree child molestation sexual assault, and count 4, second-degree child molestation sexual assault.

On May 8, 2015, the trial justice sentenced defendant to serve concurrent terms of life at the Adult Correctional Institutions for counts 1 and 3, and thirty years, to run concurrently with the life sentences, for count 4. The defendant timely appealed.

## II

## Discussion

## A

## Rule 404(b)

The defendant argues that the trial justice erred in granting the state's motion *in limine* and in admitting the testimony of Brian, Colin, and David. He maintains that the alleged prior sexual misconduct was too remote and dissimilar to the charged acts to be admissible.

## 1

## Standard of Review

With respect to defendant's challenge to the trial justice's decision to admit the 404(b) witnesses' testimony, "we examine that issue under an abuse-of-discretion standard." *State v. Rainey*, 175 A.3d 1169, 1182 (R.I. 2018). "If the evidence was admitted under Rule 404(b), then

- 14 -

'this Court is disinclined to perceive an abuse of discretion so long as the record contains some grounds for supporting the trial justice's decision * * *.'" *Id.* (quoting *State v. Cavanaugh*, 158 A.3d 268, 279 (R.I. 2017)).

**2**

**Analysis**

As a general rule, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." R.I. R. Evid. 404(b). However, Rule 404(b) carves out an exception for the admission of such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

"In molestation or sexual assault cases, evidence of a defendant's prior sexual misconduct cannot be admitted to prove that defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offenses with which he is charged." *Rainey*, 175 A.3d at 1182 (quoting *Mohapatra*, 880 A.2d at 806). However, evidence of prior sexual misconduct with someone other than the complainant is admissible under the exceptions to Rule 404(b) if the sexual offenses are "nonremote" and "similar." *Id.* (quoting *Mohapatra*, 880 A.2d at 806). The sexual offenses are "nonremote" and "similar" if they are "closely related in time, place, age, family relationships of the victims, and the form of the sexual acts." *Id.* (quoting *Mohapatra*, 880 A.2d at 806). Further, to be admissible, "the evidence must [also] be relevant to the crime charged and reasonably necessary." *Id.* at 1185 (quoting *Coningford*, 901 A.2d at 628-29).

Based on the foregoing, we begin our analysis by examining whether the testimony of Brian, Colin, and David satisfied the "nonremote" and "similar" requirements of our Rule 404(b) jurisprudence.

**a**

**Nonremoteness**

When determining whether to admit Rule 404(b) evidence, "the trial justice 'must balance the relevance of the evidence against its remoteness and the potential for improper prejudicial impact.'" *State v. Buchanan*, 81 A.3d 1119, 1125 (R.I. 2014) (quoting *State v. Dubois*, 36 A.3d 191, 200 (R.I. 2012)). Here, the trial justice did just that. She remained conscious of the time span between the alleged prior sexual misconduct and the charged acts, and she weighed this time span against the relevance of the evidence.[6] Ultimately, the trial justice determined that the similarities between the prior sexual misconduct and the charged acts were "so strong" that any remoteness was outweighed. We discern no abuse of the considerable discretion afforded to trial justices in evidentiary matters.

We are further convinced that the trial justice did not abuse her discretion in light of this Court's opinions wherein we have upheld the admission of uncharged sexual misconduct where similar time spans existed between such misconduct and the charged acts. *See Rainey*, 175 A.3d at 1184 (affirming a trial justice's finding that a time span of eleven to fifteen years was nonremote); *Coningford*, 901 A.2d at 628 (concluding that the trial justice did not abuse her discretion in finding that the probative value of the 404(b) evidence outweighed the alleged remoteness of the prior acts of sexual misconduct, which occurred seven and eleven years before

---

[6] As noted above, the incidents of sexual misconduct that the 404(b) witnesses testified to occurred between approximately 1977 and 1980, whereas the complainant's abuse occurred from approximately 1990 through 1999.

the charged act); *State v. Hopkins*, 698 A.2d 183, 186 (R.I. 1997) (upholding the trial justice's finding that the evidence's probative value outweighed the ten-year span between the prior sexual misconduct and the charged acts).

In *Hopkins*, the trial justice admitted the testimony of two witnesses concerning the defendant's sexual misconduct that occurred when they were of an age similar to that of the complainant. *Hopkins*, 698 A.2d at 186. This Court held that, despite the ten-year time span between the prior sexual misconduct and the charged act, the trial justice did not err in finding that the alleged remoteness of the 404(b) evidence was outweighed:

> "(1) by its potential probative value concerning the similar age and relationship of the boys to [the defendant] when they were allegedly victimized by him and (2) by the other indicia that [the defendant's] sexual forays involving young boys under his dominion constituted 'a modus operandi that bore [his] signature.'" *Id.* (quoting *State v. Lamoureux*, 623 A.2d 9, 13 (R.I. 1993)).

Similarly, here, the trial justice found that any remoteness was outweighed by the evidence's probative value, given the similarities between the victims' relationships to defendant, the nature of the sexual acts, and the location of the misconduct. She further determined that defendant's prior sexual misconduct would tend to prove his motive, opportunity, intent, preparation, plan, identity, and absence of mistake or accident. Consequently, we are of the opinion that the trial justice was within her discretion to conclude that the probative value of the 404(b) evidence outweighed the alleged remoteness.

**b**

**Similarity**

"[T]he factors to be considered when comparing the charged incident and the prior sexual misconduct are 'time, place, age, family relationships of the victims, and the form of the sexual acts.'" *Mohapatra*, 880 A.2d at 807 (quoting *State v. Brigham*, 638 A.2d 1043, 1045 (R.I.

- 17 -

1994)).  Looking to these factors, we conclude that the trial justice did not abuse her discretion in finding that the prior acts of sexual misconduct were similar to the charged acts.  The victims were of similar ages, between nine and twelve years old, when defendant's sexual abuse occurred.  Although Adam's abuse continued until he was much older, the trial justice perceptively noted that defendant had a greater opportunity to abuse him.  Additionally, the victims were all local boys who participated in the youth sports leagues in which defendant was involved.  The incidents of sexual misconduct all occurred at defendant's residence.  The sexual acts all involved defendant touching the genitals of the victims, under the guise of: fitting one victim for a cup; performing a sports massage on another victim with a groin injury; giving another victim a massage; and showing the complainant how to wash his genitals.

The defendant maintains that the charged acts are dissimilar to the alleged prior sexual misconduct because Adam alleged oral penetration and the 404(b) witnesses did not.  However, it is again relevant to note, as the trial justice did, that defendant had an increased opportunity to groom and abuse Adam.  Further, "we are not concerned with whether the incidents were exactly the same, nor with whether they contained 'uncannily similar facts.'" *Rainey*, 175 A.3d at 1183.  Given the striking similarities between the ages of the victims, the relationships of the victims to defendant, the locations of the sexual misconduct, and the nature of the sexual acts, the trial justice did not abuse her discretion in finding the prior sexual misconduct similar to the charged acts.

### c

### Relevant and Reasonably Necessary

Our inquiry does not end there.  To be admitted under Rule 404(b), "the evidence must [also] be relevant to the crime charged and reasonably necessary." *Rainey*, 175 A.3d at 1185

- 18 -

(quoting *Coningford*, 901 A.2d at 628-29). Pertinent to our analysis is Rule 401 of the Rhode Island Rules of Evidence, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

"We have held on more than one occasion that, when a defendant is charged with second-degree molestation, similar incidents involving other victims are admissible to demonstrate the defendant's intent to sexually gratify." *Mitchell*, 80 A.3d at 29. Because defendant was charged with second-degree child molestation sexual assault,[7] evidence that defendant engaged in similar acts of sexual misconduct—namely touching the genitals of similarly-aged boys—was relevant to demonstrate defendant's specific intent to self-gratify. *See id.* (concluding that evidence that the defendant touched the complainant's older sister was relevant to demonstrate his specific intent to sexually gratify in touching the complainant); *Coningford*, 901 A.2d at 629 ("[T]he jury could infer, from the evidence of similar incidents involving two other young boys, that [the] defendant's intent in touching [the complainant] was for the purpose of sexual arousal or gratification."); *Mohapatra*, 880 A.2d at 808 ("The fact that similar incidents occurred with different women tends to prove [the] defendant's intent to touch [the complainant] for the purpose of sexual gratification.").

In addition to the relevancy requirement, this Court has held that the 404(b) evidence must be reasonably necessary. *Rainey*, 175 A.3d at 1186. Recently, in *Rainey*, this Court concluded that testimony about other incidents of the defendant's sexual misconduct was reasonably necessary because: (1) the abuse of the complainant occurred more than twenty years ago; (2) the complainant was the only witness to testify to the incidents of sexual misconduct

---

[7] Counts 4 and 5 charged defendant with second-degree child molestation sexual assault, although, as noted above, the trial justice dismissed count 5.

against her, as there was no physical evidence or third-party eyewitness testimony; and (3) the defendant denied the allegations, creating a "credibility contest" between the defendant and the complainant. *Rainey*, 175 A.3d at 1186. In reaching our holding in *Rainey*, this Court relied on *Cavanaugh*, where we deemed evidence about the defendant's prior sexual misconduct to be relevant and reasonably necessary because "the evidence revealed a crime committed in private with a significant lapse of time between the sexual assaults and the prosecution * * * [and] [t]he credibility of the complainant was placed at center stage." *Cavanaugh*, 158 A.3d at 280.

In the instant case, we are faced with circumstances similar to those present in *Rainey* and *Cavanaugh*. Adam testified to abuse that occurred between approximately 1990 and 1999, some fifteen to twenty-four years prior to the 2014 trial. Further, as the trial justice noted, the case relied on Adam's credibility, which defendant attacked by denying the allegations levied against him and by claiming that Adam was a liar who fabricated the sexual abuse. Given the "*significant lapse of time* between the sexual assaults and the prosecution[,]" and the "credibility contest" between defendant and Adam, the testimony about defendant's alleged prior sexual misconduct was reasonably necessary. *Rainey*, 175 A.3d at 1186 (quoting *Cavanaugh*, 158 A.3d at 280). Accordingly, we conclude that the trial justice did not abuse her discretion in admitting evidence of defendant's prior sexual misconduct pursuant to Rule 404(b).

**B**

**Rule 403**

The defendant also asserts that, pursuant to Rule 403, the allegations of prior sexual misconduct should not have been admitted because the risk of prejudice outweighed the evidence's probative value. He asserts that "the probative value could scarcely have been used for any purpose other than characterizing defendant as a pedophile." The defendant also

challenges the trial justice's Rule 403 analysis; he maintains that "the record is devoid of any such inquiry, nor did the trial justice explain how this marginally relevant evidence was *not* unfairly prejudicial to [defendant]."

**1**

**Standard of Review**

As defendant's arguments with respect to Rule 403 concern the admissibility of evidence, we employ the same standard we recited above for our Rule 404(b) analysis: "[t]he admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of discretion is apparent." *Rainey*, 175 A.3d at 1187 (quoting *Mohapatra*, 880 A.2d at 805).

**2**

**Analysis**

Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." When analyzing evidence pursuant to Rule 403, a trial justice must "not only examine the evidence in the context of the case on trial, but * * * balance the evidence to determine whether its probative force 'is substantially outweighed by the danger of unfair prejudice * * *.'" *Rainey*, 175 A.3d at 1188 (quoting *Cavanaugh*, 158 A.3d at 281).

We disagree with defendant's contention that the record does not reflect a Rule 403 analysis by the trial justice. When rendering her decision on the state's motion *in limine*, the trial justice noted the necessity of conducting a Rule 403 analysis. As discussed at great length above, she found the prior sexual misconduct to be probative of defendant's motive, opportunity,

intent, preparation, plan, identity, and absence of mistake or accident. Although the trial justice did not explicitly articulate the prejudice associated with defendant's prior sexual misconduct, "because most evidence offered at trial is inherently prejudicial * * * [o]nly *unfairly* prejudicial evidence is barred under Rule 403[.]" *State v. Cook*, 45 A.3d 1272, 1280 (R.I. 2012) (quoting *State v. Gaspar*, 982 A.2d 140, 148-49 n.12 (R.I. 2009)).

The trial justice may not have conspicuously weighed the probative value against the risk of prejudice, but she did note that she would disregard the 404(b) evidence if it did not follow the state's "suggestions." This Court has previously held that, in a jury-waived trial like the instant case, "a 'trial justice, unlike a jury, can disregard prejudicial material if and when he or she determines that material to be inadmissible.'" *State v. McKone*, 673 A.2d 1068, 1075 (R.I. 1996) (quoting *State v. Notarantonio*, 622 A.2d 457, 458 (R.I. 1993)). Because "[w]e can safely assume that the trial justice, sitting without a jury, was capable of disregarding evidence that [she] would not permit to be introduced[,]" *id.*, we reject defendant's suggestion that testimony about his prior sexual misconduct biased the experienced trial justice and impaired her from rendering an impartial judgment.

This Court has held "that a trial justice's discretion to exclude evidence under Rule 403 must be used sparingly, and [i]t is only when evidence is marginally relevant and enormously prejudicial that a trial justice must exclude it." *State v. McDonald*, 157 A.3d 1080, 1092 (R.I. 2017) (quoting *State v. Mlyniec*, 15 A.3d 983, 997 (R.I. 2011)). Here, the trial justice properly exercised that discretion in admitting the testimony regarding defendant's prior sexual misconduct.

# C

## Rule 29(b)

The defendant argues that, in rendering her decision on his motion to dismiss, the trial justice exceeded "the dictates of Rule 29(b)." Specifically, he asserts that the trial justice's decision was a "mid-trial conclusive determination" that deprived him of the opportunity to present a meaningful defense. He maintains that the trial justice should have limited her analysis to determining the legal sufficiency of the state's evidence.

## 1

### Standard of Review

We employ a deferential standard of review to a trial justice's decision on a defendant's Rule 29(b) motion. *State v. Harris*, 871 A.2d 341, 346 (R.I. 2005). "This Court will uphold the findings of a trial justice presiding over a criminal bench trial unless it can be shown that he [or she] overlooked or misconceived relevant and material evidence or was otherwise clearly wrong." *State v. Berroa*, 6 A.3d 1095, 1100 (R.I. 2010).

## 2

### Analysis

Rule 29(b) provides: "In a case tried without a jury, a motion to dismiss may be filed at the close of the [s]tate's case to challenge the legal sufficiency of the [s]tate's trial evidence." When deciding such a motion, the trial justice must "weigh and evaluate the trial evidence, pass upon the credibility of the trial witnesses, and engage in the inferential process, impartially, not being required to view the inferences in favor of the nonmoving party, and against the moving party." *State v. Forand*, 958 A.2d 134, 141 (R.I. 2008) (quoting *McKone*, 673 A.2d at 1072-73). After conducting this analysis, if the trial justice "concludes that the trial evidence is sufficient to

establish guilt beyond a reasonable doubt, he or she denies the defendant's motion to dismiss and, if both sides have rested, enters decision and judgment of conviction thereon." *Id.* (quoting *McKone*, 673 A.2d at 1073). However, if the trial justice determines that the evidence is insufficient, he or she grants the motion and dismisses the case. *Id.*

We first note that defendant may have waived his challenges to the trial justice's decision on his motion to dismiss, under our long-standing raise-or-waive rule.[8] Nevertheless, this Court finds no merit in defendant's argument. The trial justice began her Rule 29(b) analysis by setting forth the relevant law, then she discussed the evidence that the state had presented and made credibility determinations regarding the witnesses. She deemed Adam and the 404(b) witnesses credible, and found the testimony by Colin and Brian to be especially cogent. The trial justice then addressed each of the remaining counts against defendant. She deemed credible Adam's testimony about counts 1 and 3, which charged defendant with first-degree child molestation sexual assault, to wit, the first incident of fellatio by Adam on defendant and the first incident of fellatio by defendant on Adam. Accordingly, she denied defendant's motion to dismiss in relation to counts 1 and 3. The trial justice also found credible Adam's testimony related to count 4, namely the first incident of defendant touching Adam's penis, and she accordingly denied the motion to dismiss with respect to count 4.

We also reject defendant's contention that the trial justice's decision on his Rule 29(b) motion, in its essence, amounted to a guilty verdict and deprived him of an opportunity to present his defense. Numerous times while rendering her decision, the trial justice acknowledged that

---

[8] After the trial justice granted defendant's motion to dismiss with respect to counts 5, 6, 7, and 8, and denied the motion with respect to counts 1, 3, and 4, counsel for defendant did not challenge the trial justice's ruling. "[I]f an issue was not preserved by *specific objection* at trial, then it may not be considered on appeal." *State ex rel. Town of Tiverton v. Pelletier*, 174 A.3d 713, 718 (R.I. 2017) (quoting *State v. Pona*, 66 A.3d 454, 468 (R.I. 2013)).

her findings were based on the record as it existed at the time, which demonstrates that she was mindful of the fact that she had only heard the state's case.[9]   Further, after rendering her decision, the trial justice asked defendant's counsel whether he intended to present evidence, which reveals the trial justice's cognizance of the fact that defendant had yet to present a defense.

Based on her evaluation of the evidence and her credibility determinations, the trial justice concluded that the evidence sufficiently established the defendant's guilt on counts 1, 3, and 4, and accordingly denied the defendant's motion to dismiss with respect to these counts. We find no error in the trial justice's Rule 29(b) analysis; she did exactly what the rule mandates: weighed the evidence, made credibility findings, and determined whether sufficient evidence established the defendant's guilt beyond a reasonable doubt.  Accordingly, the trial justice did not overlook or misconceive relevant and material evidence and was not otherwise clearly wrong.

## III

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court and remand the papers thereto.

---

[9] The trial justice prefaced many of her findings with phrases such as: "The [c]ourt finds that based on the record as it now appears * * *."; "On the record as it now appears, the [c]ourt finds * * *."; "The [c]ourt finds that on the state of the record at this time * * *."; "Based on all the facts and circumstances proven at trial thus far * * *."; and "[T]he [c]ourt finds that on this record, as it now exists * * *."

**Justice Flaherty, with whom Justice Robinson joins, dissenting.** We respectfully dissent from the holding of the majority in this case. We do so primarily for the reasons we previously set forth in dissent in *State v. Rainey*, 175 A.3d 1169, 1193 (R.I. 2018) (Flaherty, J., joined by Robinson, J., dissenting), reasons which we incorporate here. As we explained in *Rainey*, it is our firm opinion that, for evidence to be admissible under Rule 404(b) of the Rhode Island Rules of Evidence, it must be, among other things, both nonremote and similar to the charged conduct. *Rainey*, 175 A.3d at 1193. In other words, and with particular regard to this case, for "evidence of a defendant's sexual offenses against a person other than the complaining witness" to be admitted, "it [first] must be * * * nonremote *and* similar to the charged conduct * * *." *Id.* (emphasis added). Indeed, it remains our view that remoteness and similarity are distinct inquiries. For that reason, we can reach no other conclusion than that the testimony of Brian, Colin, and David was too remote to be admissible under Rule 404(b).[1]

In reaching a contrary conclusion, the majority purports to separate the nonremote and similarity analyses, writing that the Court would "begin [its] analysis by examining whether the testimony of Brian, Colin, and David satisfied the 'nonremote' and 'similar' requirements of our Rule 404(b) jurisprudence." Nevertheless, in analyzing the remoteness of the evidence offered by the testimony of Brian, Colin, and David, the majority then explains that the trial justice did not err in finding "that any remoteness was outweighed by the evidence's probative value, given the similarities between the victims' relationships to defendant, the nature of the sexual acts, and the location of the misconduct." However, the factors employed by the majority to assess remoteness are the very same factors used to assess similarity for purposes of analyzing the

---

[1] Though our primary concern relates to the remoteness of this evidence, we also note that there are significant differences in the continuing course of conduct described by the complainant, Adam, and the uncharged conduct testified to by Brian, Colin, and David.

admissibility of evidence under Rule 404(b).  *See, e.g.*, *State v. Mohapatra*, 880 A.2d 802, 807 (R.I. 2005) ("[T]he factors to be considered when comparing the charged incident and the prior sexual misconduct are 'time, place, age, family relationships of the victims, and the form of the sexual acts.'" (quoting *State v. Brigham*, 638 A.2d 1043, 1045 (R.I. 1994))).  As we said in dissent in *Rainey*, we believe that the remoteness inquiry must be separate and, as was the case in *Rainey*, the Rule 404(b) evidence here was, in our opinion, too remote.  In this case, the evidence admitted under Rule 404(b) concerning uncharged conduct ranged in time from ten to twenty-two years prior to the charged conduct.[2]

Not only are we in disagreement with the majority as to the admissibility of the testimony of Brian, Colin, and David on the basis that it was too remote, but we are also concerned by what we see, respectfully, as a troubling trend developing in our Rule 404(b) caselaw.  In this case, the trial justice admitted the Rule 404(b) evidence because it was "relevant to show motive, opportunity and intent, preparation, plan, identity and certainly absence of mistake or accident." This Court then affirmed the trial justice, delineating all the same Rule 404(b) exceptions as acceptable.[3]  Similarly, in *Rainey*, the trial justice admitted the Rule 404(b) evidence to show the

---

[2] Based on the majority's discussion of the testimony of Brian, Colin, and David, the Rule 404(b) incidents occurred between 1977 and 1980.  Because the charged conduct to which Adam testified occurred between 1990 and 1999, the time between the charged conduct and uncharged Rule 404(b) incidents ranges from ten to twenty-two years.

[3] We do acknowledge, as the majority points out, that, when she rendered her decision, the trial justice appeared to narrow the list of purposes for which she was considering the Rule 404(b) evidence.  As the trial justice stated when she rendered her decision, she found the testimony of Brian, Colin, and David "probative of a plan, a design, a signature offense absence of mistake or accident."   However, thereafter, the trial justice returned to a broader list:

> "I did not consider any of [the Rule 404(b)] testimony evidence of
> bad character or that the Defendant acted in conformity with the
> prior acts, but all of this evidence was probative, highly probative
> of motive, opportunity, intent, preparation, plan, knowledge,

defendant's "motive, his opportunity, his intent, preparation, [and] his plan * * *." *Rainey*, 175 A.3d at 1184. However, in *Rainey*, this Court zeroed in on the "common scheme or plan" exception, selecting that option from the trial justice's broader listing in his charge to the jury. Without reiterating our objections to those specific holdings, we remain troubled by the movement toward what appears to be an implicit resurrection of the "scatter-shot" approach to Rule 404(b), an approach about which this Court expressed disapproval long ago. *See State v. Jalette*, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978) ("In its charge the trial court should not take a scatter-shot approach and list all of the exceptions to the exclusionary rule. Rather, it shall designate with particularity the specific exceptions to which the 'other crimes' evidence is relevant and delete from its charge the remaining exceptions.").[4]

In keeping with the proposition that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith[,]" we feel compelled to express our concern with this Court's apparent retreat from its disapproval of a scatter-shot approach to Rule 404(b). *See* R.I. R. Evid. 404(b); *Jalette*, 119 R.I. at 627, 382 A.2d at 533. A trial justice's mere recitation of various exceptions set forth in the rule is, in our view, insufficient—especially in light of the premise of Rule 404(b). *See* R.I. R. Evid. 404(b); *see also People v. Zackowitz*, 172 N.E. 466, 468 (N.Y. 1930) (Cardozo, C.J.) ("In a very real sense a defendant starts his life afresh when he stands before a jury, a prisoner at the

absence of mistake or accident. It was probative of them all, signature crime."

In any event, we remain firm in the view that the error in this case stems from the initial admission of the testimony when the trial justice ruled on the motion *in limine*, concluding that the Rule 404(b) testimony was "relevant to show motive, opportunity and intent, preparation, plan, identity and certainly absence of mistake or accident."

[4] We realize that this case, unlike *Rainey*, was tried before a justice sitting without a jury. However, even in that context, we do not believe that the "scatter-shot" approach to Rule 404(b) issues is appropriate.

bar."). The admissibility of evidence under Rule 404(b) should not entail a formulaic exercise. It seems to us that much of the trouble and confusion regarding our Rule 404(b) analysis could be resolved by expressly adopting a clearer procedure. Rather than merely reciting each acceptable purpose for which Rule 404(b) evidence may be admitted, a trial justice, as well as the proffering attorney, should be required to state the express purpose (or limited purposes) for which the evidence is offered. *See Jalette*, 119 R.I. at 627, 382 A.2d at 533 ("In seeking to attain this particular goal [that the applicable exception is relevant to proving the charge lodged against the defendant], the trial court may insist that the prosecutor point to the specific exception on which he relies and show how that exception relates to the pending charge."). A blanket assertion that evidence is offered to show a majority of the Rule 404(b) purposes—*i.e.*, "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident"—does not satisfy this requirement. We should not allow a trial justice to make such a blanket assertion, admit the evidence, and thereafter wait for this Court to pluck a purpose that it considers acceptable from the transcript.[5]

For those reasons, we must respectfully dissent.

---

[5] Assessing whether evidence is sufficiently nonremote for purposes of admissibility under Rule 404(b) ought to be contingent on the specific purpose for which that evidence is offered.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Jesse S. Perry. |
| **Case Number** | No. 2015-255-C.A. (P1/13-1113A) |
| **Date Opinion Filed** | April 25, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For State:<br><br>Virginia M. McGinn<br>Department of Attorney General |
| | For Defendant:<br><br>Thomas M. Dickinson, Esq. |